**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **In re:** | : | **Chapter 11** |
|  | : |  |
| **COCONUT BREEZE CUISINE** | : | **Case No. 26-10640-DJB** |
| **INCORPORATED,** | : | **(Jointly Administered)[1]** |
|  | : |  |
| **Debtor.** | : |  |
|  | : |  |

**DEBTOR'S CHAPTER 11, SUBCHAPTER V PLAN OF REORGANIZATION**
**DATED MAY 19, 2026**

**ARTICLE I**
**SUMMARY**

This Plan of Reorganization (the "Plan") under Sections 1190 and 1191 of Title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") proposes to pay creditors of Coconut Breeze Cuisine Incorporated (the "Debtor") as follows from the operations of the Debtor's restaurant.

This Plan provides for:     6     classes of secured claims;
                            1     classes of priority tax claims;
                            1     classes of non-priority unsecured claims; and
                            1     class of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive a pro rata percentage of their allowed claims as estimated. This Plan also provides for payments of administrative claims in full on the effective date of the Plan or as otherwise agreed to, and for payment of priority claims to the extent permitted by the Code, unless the holder of such claim agrees to different treatment.

All creditors and equity interest holders should refer to Articles III through V of this Plan for information regarding the precise treatment of their claim.

**YOUR RIGHTS MAY BE AFFECTED.  YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)**

---

[1] On March 16, 2026, the Court entered an order directing the joint administration of the above-captioned case and *In re Irie Entree LLC*; Case No. 26-10642-DJB. (D.I. #39).

4911-4834-6278 v5

## ARTICLE II
## HISTORY OF THE DEBTOR'S BUSINESS OPERATIONS AND NOTABLE BANKRUPTCY EVENTS

On February 18, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court"), commencing the instant proceedings.

The Debtor is a company formed to own and/or operate a Jamaican restaurant located at 708 Church Lane, Lansdowne, Pennsylvania 19050. Fitzpatrick Coleman ("Coleman") is the Debtor's president and maintains an address at 232 High Street, Sharon Hill, Pennsylvania 19079. The Debtor has historically been successful; however, the COVID-19 pandemic and limitations on customer access caused by the same reduced profitability. In addition, the Debtor provided assistance to its co-Debtor, Irie Entree LLC ("Irie"), which caused additional cash strain. Taken together, the above led to the Debtor's bankruptcy filing.

Coleman is also the manager of Irie, a limited liability company created for the purpose of owning and/or operating a Jamaican restaurant located at 4001 Chestnut Street, Philadelphia, Pennsylvania 19104. Irie is obligated to PIDC Community Capital ("PIDC"), on a certain prepetition note dated on or about March 26, 2024, in the principal amount of $150,000.00 (the "Note"). The Debtor is a corporate guarantor on the Note, and therefore, PIDC is a secured creditor of the Debtor and liable to PIDC for all amounts due under the Note.

The Debtor had $1,074,639.55 in prepetition debt, consisting mainly of secured claims owed to the United States Small Business Administration ("SBA") in the amount of $590,068.71, secured claims owed to PIDC on the Note, secured claims owed to the Pennsylvania Department of Revenue sales tax obligations in the amount of $252,180.86, and alleged secured claims of $63,700.31 collectively owed to various merchant cash advance lenders (collectively the "MCA Lenders") on loans the Debtor took out prepetition. The Debtor does not believe there is value in its assets for the claims of the MCA Lenders, and the Plan treats them as unsecured, Class 8 Claims. The Debtor owes priority claims in the amount of $7,772.06, mainly in the nature of sales tax obligations to the Pennsylvania Department of Revenue and the county. Finally, the Debtor owes $6,905.68 to unsecured non-priority vendors.

The cessation of Irie as a business and the release of the Debtor by UCWest Chestnut LLC ("UCWest") obtained and approved by order of this Court dated April 16, 2026 (D.I. #83), rejected the commercial lease between the Debtor and UCWest dated July 1, 2020, and settled all claims of UCWest against the Debtor, thereby relieving the Debtor of hundreds of thousands of dollars of unsecured rejection damages and administrative rent claims. Further, the contemplated sale of the Irie's liquor license #113730 (the "Liquor License") is expected to satisfy the secured claims of PIDC against the Debtor. The Debtor believes its restructured balance sheet and reduced cash demands will allow it to achieve the Plan's objectives.

4911-4834-6278 v5

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

| | | |
|---|---|---|
| 3.01 | **Class 1.** | Allowed Consensual Secured Claim of the US Small Business Administration ("SBA") in the amount of $590,068.71, to the extent allowed as a secured claim under Section 506 of the Bankruptcy Code. |
| 3.02 | **Class 2.** | Allowed Consensual Secured Claim of Philadelphia Industrial Development Corporation ("PIDC") in the original principal amount of $115,000.00, to the extent allowed as a secured claim under § 506 of the Bankruptcy Code. |
| 3.03 | **Class 3.** | Allowed Consensual Secured Claim of the Pennsylvania Department of Revenue in the amount of $252,180.86, to the extent allowed as a secured claim under Section 506 of the Bankruptcy Code. |
| 3.04 | **Class 4.** | Allowed Consensual Secured Claim of Recovery Solutions Group, LLC ("RSG") in the amount of $13,309.74, to the extent allowed as a secured claim under § 506 of the Bankruptcy Code. |
| 3.05 | **Class 5.** | Allowed Consensual Secured Claim of WebBank in the amount of $24,125.29, to the extent allowed as a secured claim under Section 506 of the Bankruptcy Code. |
| 3.06 | **Class 6.** | Allowed Consensual Secured Claim of Fox Funding Group LLC ("Fox") in the amount of $27,139.18, to the extent allowed as a secured claim under Section 506 of the Bankruptcy Code. |
| 3.07 | **Class 7.** | Priority Tax Claim of the Pennsylvania Department of Revenue in the amount of $7,772.06, to the extent allowed as a secured claim under Section 507 of the Bankruptcy Code. |
| 3.08 | **Class 8.** | Allowed General Unsecured Claims. |
| 3.09 | **Class 9.** | Equity Interests. |

3

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

As required by the Bankruptcy Code under § 1123(a)(1), this Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. This Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. If this Plan is confirmed, each Creditor's recovery is limited to the amount provided in this Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject this Plan, and only Creditors holding Allowed Claims may vote. A class that is not impaired is deemed to accept this Plan.

Claims and interests shall be treated as follows under the Plan:

### 4.01   Secured Claims

Secured Claims are claims secured by liens on property of the estate. The following represent all classes containing Debtor's secured pre-petition Secured Claims and their treatment under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 **Consensual Secured Claim of SBA** | Impaired | Class 1 is impaired by this Plan. The SBA's claim consists of principal and arrearages due under certain loan documents. The SBA's claim shall be paid in full, with the amount of the SBA's claim, $590,068.71, re-amortized over the remaining term of the loan documents. The SBA will receive monthly payments in accordance with the terms of the loan documents until paid in full. |
| Class 2 **Consensual Secured Claim of PIDC** | Impaired | Class 2 is impaired by this Plan. PIDC's claim will be reduced or eliminated by the sale of the Liquor License. To the extent that there remains a secured claim in favor of PIDC against the Debtor after application of the proceeds from the sale of the Liquor License, the Debtor will re-amortize the Class 2 claim so that the Class 2 claim will receive regular installments paid over a period not exceeding a ten (10) year period from the order of relief, to the extent no value exists, the PIDC secured claim will be treated as a Class 7 General Unsecured Claim. |
| Class 3 **Secured Claim of the Pennsylvania** | Impaired | Class 3 is impaired by this Plan. The Pennsylvania Department of Revenue's claim consists primarily of sales tax obligations. The Pennsylvania Department of Revenue's claim shall be paid in |

4

| | | |
|---|---|---|
| **Department of Revenue** | | full, with the amount of the claim amortized so that it will receive regular installments paid over a period not exceeding ten (10) years from the order of relief, with interest accruing at the statutory rate. |
| Class 4 **Claim of RSG** | Impaired | Class 4 Claims will be paid as allowed. The Debtor believes there is no collateral for this claim, and the claim will be treated as fully unsecured Class 8 Claims. |
| Class 5 **Claim of WebBank** | Impaired | Class 5 Claims will be paid as allowed. The Debtor believes there is no collateral for this claim and that it will be treated as a fully unsecured Class 8 Claim. |
| Class 6 **Claim of Fox** | Impaired | Class 6 Claims will be paid as allowed. The Debtor believes there is no collateral for this claim, and the claim will be treated as fully unsecured Class 8 Claims. |

### 4.02    Priority Tax Claims

The Bankruptcy Code requires, and thus this Plan provides, that each holder of such a Section 507(a)(8) Priority Tax Claim receives the present value of such claim in deferred cash payments, over a period not exceeding six (6) years from the date of the assessment of such tax. The following represent all classes containing Debtor's pre-petition Priority Tax Claims and their treatment under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 7 **Priority Tax Claim of the Pennsylvania Department of Revenue** | Unimpaired | Class 7 Claims will be paid in accordance with Section 1129(a)(9)(c) over time, from time to time, from the operations of the Debtor's restaurant, with interest accruing at the statutory rate. |

### 4.03    General Unsecured Claims

General Unsecured Claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a). The following represent the Debtor's pre-petition General Unsecured Claims and their treatment under this Plan:

5

4911-4834-6278 v5

| Class | Impairment | Treatment |
|---|---|---|
| Class 8 **General Unsecured Creditors** | Impaired | Class 8 Claims will receive a pro rata distribution on a quarterly basis on account of their allowed unsecured claim from time to time until they receive five percent (5.00%) of their respective claims, but only after payments to Classes 1-7. |

### 4.04   Equity Interests

Equity Interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. The Debtor does not believe there is any value in its Equity Interests. The following represent the Debtor's Equity Interest holders and their treatment under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 9 **Equity Interests** | Impaired | Equity Interest holders shall retain their ownership interest in the Debtor in the current ownership percentages. |

**ARTICLE V**
**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND FEES**

Under Section 1123(a)(1), certain types of claims, such as administrative claims and fees, are unclassified claims, and as such, are not included in the classes listed in Articles III and IV of this Plan. The treatment of these claims is provided below.

| 5.01 | **Administrative Expense Claims** | Each holder of an allowed administrative expense claim allowed under Section 503 of the Bankruptcy Code, will be paid in full on the Effective Date of the Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. In the event this Plan is confirmed under Section 1191(b), the Plan may provide for payment of claims specified in paragraph (2) or (3) of Section 507(a) through the Plan, rather than paid in full on the Effective Date of the Plan. |
|---|---|---|
| 5.02 | **Attorney Compensation** | The Debtor's attorney, Obermayer Rebmann Maxwell & Hippel LLP ("Obermayer"), shall be paid for the services rendered to the Debtor herein as an administrative and/or priority claim under Section 507 of the Bankruptcy Code and pursuant to Article V of this Plan. All fees and expenses requested by Obermayer are subject to review and approval by the Court under Sections 329 and 330 of the Bankruptcy Code. |

6

| 5.03 | **Trustee Fees** | The Trustee shall be paid for services rendered in this Chapter 11 case, an administrative and/or priority claim under Section 507 of the Bankruptcy Code, and pursuant to Article V of this Plan. All fees and expenses requested by the Trustee are subject to review and approval by the Court under Sections 329 and 330 of the Bankruptcy Code. |

## ARTICLE VI
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

### 6.01   Disputed Claims

A disputed claim is a claim that has not been allowed or disallowed, by a final non-appealable order, and as to which either:

> (i)   A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

> (ii)   No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

### 6.02   Claim Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims and shall file objections on or before sixty (60) days from the effective date of the order confirming the Debtor's Plan.

### 6.03   Delay of Distribution on a Disputed Claim

No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

### 6.04   Settlement of Disputed Claims

The Debtor will have the power and authority to settle and compromise a disputed claim with the court and in compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 7.01   Assumed Executory Contracts and Unexpired Leases

The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:

4911-4834-6278 v5

Lease with W. Keith Williams dated March 1, 2023, for the commercial real property located at 708 Church Lane, Yeadon, Pennsylvania 19050.

**7.02    Rejection of Executory Contracts and Unexpired Leases**

Except for the executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under Article 14.02 of the Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming the Plan.

**ARTICLE VIII**
**FEASIBILITY AND MEANS FOR IMPLEMENTATION OF THE PLAN**

Payments and distributions under the Plan will be funded by the operations of the Debtor's restaurant.

**8.01    Ability to Initially Fund the Plan**

The Debtor believes that on the Effective Date of the plan, the Debtor will have sufficient cash on hand to pay all claims and expenses entitled to payment on that date. The Debtor believes its restructured balance sheet and reduced cash demands, as detailed in Article II of the Plan, will allow it to fully fund the Plan.

**8.02    Debtor's Disposable Income and Future Plan Funding**

The Debtor will submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

An exhibit describing (i) the Debtor's projected disposable income as defined by Section 1191(d) of the Bankruptcy Code, (ii) the details supporting and the assumptions under which said projections were made, and (iii) the source and value of funds and assets available for distribution under the Plan is attached as **Appendix "A"** hereto.

**8.03    Payments**

If this Plan is confirmed under either Section 1191(a) or Section 1191(b) of the Bankruptcy Code, the Debtor shall act as the Disbursing Agent, and payments to Creditors provided for in this Plan will be made directly by the Debtor.

**8.04    Order of Distribution**

Throughout the duration of the Plan, payments shall be disbursed in a "waterfall" approach, with Administrative Expenses paid first, priority creditors second, secured creditors third, and

general unsecured creditors last. Claims in the same category shall be paid pro-rata. The Debtor does not intend to make periodic payments outside of the waterfall approach.

## ARTICLE IX
## POST-CONFIRMATION MANAGEMENT

The Post-Confirmation Officers/Managers of the Debtor shall be as follows:

| Name | Position |
|---|---|
| Fitzpatrick Coleman | President |

## ARTICLE X
## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. Unsecured creditors would receive no distributions in a Chapter 7 liquidation. Under the Plan, they shall receive a distribution equivalent to five percent (5.00%) of their respective claims. Therefore, this test is met.

## ARTICLE XI
## DISCHARGE

If the Plan is confirmed under Section 1191(a), on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in Section 1141(d) of the Bankruptcy Code; or

If the Plan is confirmed under Section 1191(b), as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in Section 1141(d)(1)(A), and all other debts allowed under Section 503 and provided for in this Plan, except any debt: (i) on which the last payment is due after the first three (3) years of the plan, or such other time not to exceed five (5) years fixed by the court; or (ii) if applicable, of the kind specified in Section 523(a).

## ARTICLE XII
## PROPERTY VESTS IN DEBTOR FREE AND CLEAR

Except as otherwise provided for in this Plan or in the order confirming this Plan, all of the property of the estate, pursuant to Sections 1141(b) and 1141(c) of the Bankruptcy Code, vests in the Debtor as of the Effective Date free and clear of any claim or interest of any creditor provided for by this Plan.

If a plan is confirmed under Section 1191(b), property of the estate includes, in addition to the property specified in Section 541, all property of the kind specified in that section that the

4911-4834-6278 v5

Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first.  Except as provided in Section 1185 of the Bankruptcy Code, this Plan, or the order confirming this Plan, the Debtor shall remain in possession of all property of the estate.

**ARTICLE XIII**
**CONFIRMED PLAN BINDING ON DEBTOR AND CREDITORS**

Except as provided in Sections 1141 or 1192 of the Bankruptcy Code, as applicable, the provisions of this Plan shall, upon confirmation, bind the Debtor, each and every creditor of this estate and each party in interest, whether or not the claim of such creditor or party is provided for by the Plan and whether or not such creditor or party has accepted or has rejected the Plan.

**ARTICLE XIV**
**GENERAL PROVISIONS**

### 14.01   Definitions and Rules of Construction

Unless otherwise defined herein, in Article XVI below, and/or otherwise, the definitions and rules of construction set forth in Sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan. In all references herein to any parties, persons, entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

### 14.02   Effective Date

The effective date of this Plan is thirty (30) days after the entry of the order confirming this Plan unless the confirmation order states otherwise. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

### 14.03   Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 14.04   Binding Effect

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

4911-4834-6278 v5

**14.05  Captions**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**14.06  Appendices**

The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.

**14.07  Controlling Effect**

Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, the laws of the State of  Pennsylvania govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**14.08  Retention of Jurisdiction**

The Court shall retain jurisdiction of the case after the Confirmation Date for the following purposes: (a) to determine any and all objections in the allowance of claims and amendments to schedules; (b) to classify the Claim of any Creditor and to re-examine Claims which have been allowed for purposes of voting, to determine such objections as may be filed to Claims; (c) to determine any and all disputes arising under or in connection with the Plan, including, but not limited to, disputes related to Contributed Income, any default remedies granted herein, and the sale of any of the Debtors' assets, collection or recovery of any assets; (d) to determine any and all applications for allowance of compensation and reimbursement of expenses herein for fees incurred through the Confirmation Date; (e) to determine any and all pending applications for rejections of executory contracts and unexpired leases and the allowance of any claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan; (f) to determine any and all applications, adversary proceedings and contested and litigated matters pending in the case as of, or after, the Confirmation Date; (g) to determine any and all proceedings for recovery of payments pursuant to any Cause of Action; (h) to modify any provision of the Plan to the full extent permitted by the Bankruptcy Code; (i) to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of the Plan; (j) to determine such other matters which may be provided for in the Confirmation Order as may be authorized under the provisions of the Bankruptcy Code; (k) to hear and enter an order regarding any Claims under Section 505 of the Bankruptcy Code; (l) to enter any order, including injunctions, necessary to enforce the terms of the Plan, the powers of the Debtor under the Bankruptcy Code, this Plan and as the Court may deem necessary; and (m) over the Causes of Action.

4911-4834-6278 v5

## ARTICLE XV
## OTHER PROVISIONS

### 15.01   Injunction

*ALL UNSECURED CREDITORS OF THE DEBTOR, AS OF THE PETITION DATE, SHALL BE ENJOINED FROM COMMENCING OR CONTINUING ANY ACTIONS, IN LAW OR EQUITY, THAT WERE OR COULD HAVE BEEN BROUGHT AGAINST THE DEBTOR. AS A RESULT OF CONFIRMATION OF THIS PLAN, ALL CLAIMS, WHETHER SCHEDULED OR FILED, AND CAUSES OF ACTION AGAINST THE DEBTOR ARE RELEASED.*

### 15.02   Tax Consequences of the Plan

*CREDITORS AND EQUITY INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.*

### 15.03   Modification of Plan

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to Section 1193(a). However, the Bankruptcy Court may require additional items, including revoting on the Plan. If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (i) it is within three (3) years of the Confirmation Date, or such longer time not to exceed five (5) years, as fixed by the Court, and (ii) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 15.04   Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

### 15.05   Plan Proposed in Good Faith

The Debtor represents that it is within the Debtor's ability to carry out this Plan, and the Plan is submitted in good faith.

4911-4834-6278 v5

**ARTICLE XVI**
**DEFINITIONS**

**16.01**   **Administrative Expense** shall mean any cost or expense of administration of the Chapter 11 case allowable under Section 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expense of operating the business of the Debtor, if any, indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business, all allowances of compensation and reimbursement of expenses, any fees or charges assessed against the estate of any Debtor under Chapter 123, Title 28, of the United States Code, and the reasonable fees and expenses of the Debtor's Professionals as defined herein ("Professional Fee Claim") incurred by the Proponent in connection with the Chapter 11 case.

**16.02**   **Allowed** when used as an adjective preceding the words "Claims" or "Equity Interest," shall mean any Claim against or Equity Interests of the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim or Equity Interest against such Debtor, or, if no proof of claim or Equity Interest is filed, which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" and "Allowed Equity Interest" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity Interest from and after the Petition Date.

**16.03**   **Allowed Administrative Expense** shall mean any Administrative Expense allowed under Section 507(a)(1) of the Bankruptcy Code.

**16.04**   **Allowed Unsecured Claim** shall mean an Unsecured Claim that is or has become an Allowed Claim.

**16.05**   **Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*

**16.06**   **Bankruptcy Court** shall mean the United States Bankruptcy Court for the Eastern District of Pennsylvania having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. § 158, the unit of such District Court constituted pursuant to 28 U.S.C. § 151.

**16.07**   **Bankruptcy Rules** shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. § 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

**16.08**   **Business Day** means and refers to any day except Saturday, Sunday, and any other day on which commercial banks in Pennsylvania are authorized by law to close.

4911-4834-6278 v5

**16.09**   **Chapter 11 Case** shall mean a case under Chapter 11 of the Bankruptcy Code in which Coconut Breeze Cuisine Incorporated is the debtor.

**16.10**   **Claim** shall mean: any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. This definition includes all claims as such term is defined in Section 101(5) of the Bankruptcy Code.

**16.11**   **Class** shall mean a grouping of substantially similar Claims or Equity Interests for common treatment thereof pursuant to the terms of this Plan.

**16.12**   **Confirmation** shall mean the entry of an Order by this Court approving the Plan in accordance with the provisions of the Bankruptcy Code.

**16.13**   **Confirmation Hearing** shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan.

**16.14**   **Confirmation Order** shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**16.15**   **Creditor** shall mean any person that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Debtor's estate of any kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. This includes all persons, corporations, partnerships, or business entities holding claims against the Debtor.

**16.16**   **Debt** means, refers to, and shall have the same meaning ascribed to it in Section 101(12) of the Bankruptcy Code.

**16.17**   **Debtor** shall mean Coconut Breeze Cuisine Incorporated.

**16.18**   **Disbursing Agent** shall mean the Debtor or any party appointed by and subject to Court approval, which shall effectuate this Plan and hold and distribute consideration to holders of Allowed Claims and Allowed Equity Interests pursuant to the provisions of the Plan and Confirmation Order.

**16.19**   **Effective Date** shall mean the day thirty (30) days after the entry of the Confirmation Order.

**16.20**   **Equity Interest Holder** shall mean the holder of an equity interest in the Debtor.

**16.21**   **Equity Interest** shall mean any interest in the Debtor represented by stock, warrants, options, or other rights to purchase any shares of stock in the Debtor.

4911-4834-6278 v5

**16.22** **Final Order** shall mean an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

**16.23** **Impaired**, when used as an adjective preceding the words "Class of Claims" or "Class of Equity Interests," shall mean that the Plan alters the legal, equitable, or contractual rights of the member(s) of that class.

**16.24** **Person** shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government or any political subdivision thereof, or other entity.

**16.25** **Petition Date** shall mean the date on which the Debtor filed this petition for relief commencing the Chapter 11, Subchapter V Case.

**16.26** **Plan** shall mean the Plan of Reorganization filed in these Proceedings, together with any additional modifications and amendments.

**16.27** **Priority Non-Tax Claim** shall mean a Claim entitled to priority under Sections 507(a)(2), (3), (4), (5), (6), and/or (7) of the Bankruptcy Code, but only to the extent it is entitled to priority in payment under such subsection(s).

**16.28** **Priority Tax Creditor** shall mean a Creditor holding a priority tax claim.

**16.29** **Priority Tax Claim** shall mean any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

**16.30** **Proceedings** shall mean the Chapter 11 Case of the Debtor, whether proceeding under Subchapter V or otherwise.

**16.31** **Professional** means and refers to all attorneys, accountants, appraisers, consultants, and other professionals retained or to be compensated pursuant to an Order of the Court entered under Sections 327, 328, 330, or 503(b) of the Bankruptcy Code.

**16.32** **Professional Fee Claim** means and refers to a claim by any and all professionals as provided for in Sections 327, 328, 330, and 503(b) of the Bankruptcy Code.

**16.33** **Proponent** means the Debtor, Coconut Breeze Cuisine Incorporated.

**16.34** **Reorganized Debtor** means the Debtor after confirmation of the Plan.

**16.35** **Secured Claim** means and refers to a Claim which is secured by a valid lien, security interest, or other interest in property in which the Debtor has an interest which has been perfected properly as required by applicable law, but only to the extent of the value of the Debtor's interest in

4911-4834-6278 v5

such property, determined in accordance with Section 506(a) of the Bankruptcy Code.

**16.36  Trustee** means Richard E. Furtek, CPA, the Subchapter V Trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. § 1183(b), this Plan, or the order confirming this Plan.

**16.37  Unsecured Claim** shall mean any Claim against the Debtor which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date for such Debtor, and which is not: (i) a Secured Claim pursuant to Section 506 of the Bankruptcy Code, as modified by Section 1111(b) of the Bankruptcy Code; or (ii) a Claim entitled to priority under Sections 503 or 507 of the Bankruptcy Code. "Unsecured Claim" shall include all Claims against the Debtor that are not expressly otherwise dealt with in the Plan.

**16.38  Other Definitions** A term used and not defined herein but that is defined in the Bankruptcy Code shall have the meaning set forth therein. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Moreover, some terms defined herein are defined in the section in which they are used.

Respectfully submitted,

COCONUT BREEZE
CUISINE INCORPORATED

*/s/ Fitzpatrick Coleman*
Fitzpatrick Coleman,
President
*Coconut Breeze Cuisine Incorporated, Plan Proponent*

OBERMAYER REBMANN MAXWELL &
HIPPEL LLP

*/s/ Edmond M. George*
Edmond M. George, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Telephone: (215) 665-3140
Facsimile: (215) 665-3165
E-mail: edmond.george@obermayer.com
*Counsel to Debtor, Coconut Breeze Cuisine Incorporated*

16

4911-4834-6278 v5